LEE TRAN & LIANG APLC
Steven R. Hansen (Bar No. 198401)
 srh@ltlcounsel.com
Enoch H. Liang (Bar No. 212324)
 ehl@ltlcounsel.com
601 South Figueroa Street, Suite 4025
Los Angeles, California 90017
Telephone: (213)612-3737
Facsimile: (213) 612-3773

Attorneys for Defendant
DISNEY CONSUMER PRODUCTS, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEM & I PRODUCTS, INC.<br><br>Plaintiff,<br><br>vs.<br><br>DISNEY CONSUMER PRODUCTS, INC.; GLOBAL DESIGN CONCEPTS, INC.; JUICY COUTURE, INC.; and DOES 1 through 10, inclusive, | Case No. SACV 10-1051 AG (RNBx)<br><br>Hon. Andrew J. Guilford<br><br>**NOTICE OF MOTION AND MOTION OF DISNEY CONSUMER PRODUCTS, INC. TO DISMISS, OR IN THE ALTERNATIVE, FOR MORE DEFINITE STATEMENT;**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**[PURSUANT TO F.R.C.P. 8(A), 9(B), and 12(B)(6)]**<br><br>**DATE:** October 25, 2010<br>**TIME:** 10:00 a.m.<br>**CTRM:** 10D |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on October 25, 2010, at 10:00 a.m., or as soon thereafter as this matter may be heard, before the Honorable Andrew J. Guilford in Courtroom 10D of the United States District Court for the Central District of California, Santa Ana Division, located at 411 West Fourth Street, Santa Ana, California 92701-4516, Defendant Disney Consumer Products, Inc. ("DCP") will, and hereby does, move this Court for an Order, pursuant to Fed. R. Civ. P. 8, 9, and 12, dismissing Claims for Relief Nos. One (Breach of Implied Contract), Two (Fraud), Three (Intentional Interference with Contract), Four (Intentional Interference with Prospective Economic Advantage), and Six (Patent Infringement) asserted against DCP.

This Motion is made on the grounds that each and every claim for relief asserted in the Complaint fails to state a claim for relief against DCP.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities in support thereof, all pleadings and papers on file in the action, all other matters of which the Court may take judicial notice, and such other and further matters as may be presented to the Court at, or in connection with, the hearing.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3. The parties' counsel met and conferred by telephone on September 16, 2010. The attorneys present for DCP at the conference were Steve Hansen and

//
//
//
//
//
//
//

i

1    Enoch Liang.   The attorneys present for Plaintiff at the conference were William

2    O'Brien and Marc Williams.

3

4    DATED:  September 27, 2010          LEE TRAN & LIANG APLC

5

6

7

8                                          By  /s/ Enoch Liang (9.27)
                                               Steven R. Hansen
9                                              Enoch H. Liang
                                               Attorneys for Defendant Disney Consumer
10                                             Products, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES.............................................2

INTRODUCTION ................................................................................................2

ARGUMENT......................................................................................................3

I.   The Statute of Limitations Bars Plaintiff's Breach of Implied Contract, Fraud, and Intentional Interference Claims for Relief .......................................................3

II.   Plaintiff's Contract and Tort Claims Should be Dismissed as a Matter of Law Pursuant to Rule 12(b)(6) and Rule 9(b) .......................................................5

   A.   Plaintiff does not and cannot allege the requisite elements underlying its First Claim for Relief for breach of implied contract .........................................5

   B.   The Second Claim for Relief for fraud should be dismissed for failure to state a claim................................................................................................6

   C.   The Third Claim for Relief for intentional interference with contract should be dismissed because it cannot be based on a mere "agreement to agree"..............................................................................8

III.   The Sixth Claim for Relief for Patent Infringement Should be Dismissed ...9

   A.   Patent infringement claims can be dismissed as a matter of law ............10

   B.   The Accused Products are non-infringing because they lack significant claim elements of the '707 Patent................................................................11

      1.   The Accused Products do not infringe Claim No. 1 of the '707 Patent ..12

      2.   The Accused Products do not infringe Claim No. 19 of the '707 Patent 13

CONCLUSION................................................................................................14

APPENDIX:  CLAIM ELEMENTS COMPARED TO ACCUSED PRODUCTS 15

APPENDIX:  PICTURES OF ACCUSED PRODUCTS ......................................19

DEFT DCP'S NOTICE OF MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Cases**

*AntiCancer Inc. v. Xenogen Corp.*, 248 F.R.D. 278, 282 (S.D. Cal. 2007) ............ 10

*Ashcroft v. Iqbal*, __ U.S. __, __, 129 S. Ct. 1937, 1949 (2009) ........................... 10

*Autry v. Republic Productions*, 30 Cal.2d 144, 151 (1947) ..................................... 8

*Bai v. L & L Wings, Inc.,* 160 F.3d 1350, 1353 (Fed. Cir. 1998) .......................... 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ............................................. 6

*Blaustein v. Burton*, 9 Cal.App.3d 161, 185 (1970) ................................................ 3

*Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) .............................................. 11

*Campbell v. The Walt Disney Company*, __ F.Supp.2d __, 2010 WL 2489189 (N.D. Cal. May 7, 2010) ...................................................................................... 11

*Capcom v. MKR Group*, No. C 08-0904, 2008 WL 4661479 (N.D. Cal. 2008)..... 11

*Christianson v. West Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945)......................... 10

*Colida v. Nokia, Inc.*, 347 F3d.Appx. 568, 569-570 (Fed. Cir. Oct. 6, 2009) ........ 10

*Copeland v. Baskin Robbins U.S.A.*, 96 Cal.App. 4th 1251, 1263 (2002). ............... 9

*Cybor Corp. v. PAS Techs., Inc.,* 138 F.3d 1448, 1454-55 (Fed. Cir. 1998) *(en banc)* ......................................................................................................................... 11

*Etco Corp. v. Hauer*, 161 Cal.App.3d 1154, 1158 (1984) ....................................... 8

*Faris v. Enberg*, 97 Cal.App.3d 309, 318-320 (1979) .............................................. 5

*Goodman v. Kennedy*, 18 Cal.3d 355, 346-47 (1976)............................................... 7

*In re Daou Sys., Inc.,* 411 F.3d 1006, 1027 (9th Cir. 2005)...................................... 7

*Klekas v. EMI Films, Inc.*, 150 Cal.App.3d 1102, 1114 (1984).............................. 5

*Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal.App.4th 603, 612-613 (1992)................................................................................................................... 6, 7

*McCarthy Gilroy, LLC v. Starbucks Corp.*, No. C-08-05411, 2009 WL 3353238, at *3-*4 (N.D. Cal. Oct. 15, 2009) ........................................................................... 9

*Monsanto Co. v. Syngenta Seeds, Inc.,* 503 F.3d 1352, 1359 (Fed. Cir. 2008) ...... 11

*Odom v. Microsoft Corp.*, 486 F.3d 541, 553-54 (9th Cir. 2007) .............................. 7

*Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126 (1990)...8

*Phillips v. AWH Corp.,* 415 F.3d 1303, 1314 (Fed. Cir. 2005) *(en banc)* ..............11

*Rennick v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309, 315 (9th Cir. 1996).......................9

*United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992) ..................................................................................................................6

*Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1105 (9th Cir. 2003)..............................7

**Statutes**

*Cal. Civ. Proc. Code* Section 338(d) ..........................................................................3

*Cal. Civ. Proc. Code* Section 339..............................................................................3

**Treatises**

1 Williston on Contracts, Section 4;11, at 504 (4th ed. 2005) ...................................9

DEFT DCP'S NOTICE OF MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff alleges that in February 2006 it discussed with DCP a product Plaintiff was working on called the "Pack 'N Wrap."  Because DCP does not manufacture products, DCP suggested that Plaintiff get in touch instead with one or two licensee manufacturers.[1]  Plaintiff alleges that DCP then instructed these "vendors" not to cooperate with the Plaintiff so that DCP could make its own imitation Pack 'N Wrap product.  Based on these allegations, Plaintiff asserts claims for relief against DCP for breach of implied contract, fraud, intentional interference with contract, intentional interference with prospective economic advantage, and patent infringement.

By Plaintiff's own admissions, however, four of the five claims are too late because Plaintiff was aware in 2006 of all the underlying facts:  supposedly a "vendor" told Plaintiff in March 2006 that DCP had "prevented it" from developing the Pack 'N Wrap.  Complaint, ¶¶ 23, 24.  Thus, taking the allegations as true, the statute of limitations on Plaintiff's First, Second, Third, and Fourth Claims for Relief began to run more than four years ago and are now time-barred.

Beyond the limitations bar, though, the first three claims are dismissible anyway.  The First Claim for Relief for breach of implied contract fails to allege several essential elements.  The Second Claim for Relief for fraud does not plead the relevant facts with particularity as required under Rule 9(b) and fails to allege essential elements.  The Third Claim for Relief for intentional interference with contract fails because the "contract" is, by its own terms, a non-binding "Letter of Intent," an unenforceable "agreement to agree."

---

[1] Plaintiff uses the term "Disney-approved vendors" for such licensees.  That characterization is inaccurate.  DCP licenses Disney intellectual property (copyrights and trademarks) such as "Camp Rock" to licensees such as Fashion Accessory Bazaar.  The licensees, not DCP, manufacture and sell the products to retailers such as Target.

Finally, the Sixth Claim for Relief for patent infringement is facially implausible.  The patent-in-suit (the "'707 Patent") is directed to a simple product, a portable roll-up pack, and Plaintiff has failed to describe how the claims of that Patent cover the allegedly infringing product.  A simple comparison of the "Plush Throw with Travel Wrap" (the "Accused Products") to the '707 Patent's claims makes vividly clear that several claim elements are lacking.  Under these facts and the heightened pleading standards recently outlined by the Supreme Court, Plaintiff's patent infringement claims should also be dismissed.

## ARGUMENT

## I.   The Statute of Limitations Bars Plaintiff's Breach of Implied Contract, Fraud, and Intentional Interference Claims for Relief

Plaintiff's First Claim for Relief for breach of implied contract and Third and Fourth Claims for Relief for intentional interference have a two-year statute of limitations.  *See Cal. Civ. Proc. Code* Section 339; *Blaustein v. Burton*, 9 Cal.App.3d 161, 185 (1970).  Plaintiff's Second Claim for Relief for fraud has a three-year statute of limitations.  *See Cal. Civ. Proc. Code* Section 338(d).  Plaintiff filed its Complaint on July 12, 2010, at least two years after the two-year statute had run and at least one year after the three-year statute had run.

The Complaint alleges that in March 2006, Plaintiff's principal Lisa Landay went to New York to pitch the Pack 'N Wrap product to two "Disney-approved vendors," Li & Fung and GDC.  Both Li & Fung and GDC "loved" the product and wanted to work with Plaintiff to develop and sell it.  Complaint, ¶ 22.  On March 21, 2006, though, Li & Fung wrote an email to Ms. Landay "that Li & Fung was not going to work with [Plaintiff] on the Pack 'N Wrap," making "it clear that Disney did not want Li & Fung doing a deal with [Plaintiff] and that Li & Fung had to obey Disney, regardless of Li & Fung's own preferences."  Complaint, ¶¶

DEFT DCP'S MOTION TO DISMISS

23 and 24.

In June 2006, though, Plaintiff and GDC entered into a "Letter of Intent" to "negotiate in good faith" for 90 days toward "a definitive written agreement with respect to the licensing of the [Pack 'N Wrap] Products." Complaint, ¶ 26, and Exh. B. GDC did not follow through. Six months later, in December 2006, Plaintiff sent GDC a draft agreement, which GDC did not sign. Plaintiff infers that "[t]he reason for GDC's silence and sudden loss of interest was the same reason why Li & Fung felt unable to work with [Plaintiff]: Disney used its power as GDC's 'boss' to prevent [GDC] from going forward with [Plaintiff]." Complaint, ¶¶ 30 and 31.

Under this set of alleged facts, the First Claim for Relief of breach of implied contract was time-barred by March 2008 because Plaintiff "knew" by as early as March 2006 that DCP would not permit its approved "vendors" to develop the Pack 'N Wrap with Plaintiff. The Second Claim for Relief for fraud, predicated upon the same set of facts, had to be asserted no later than March 2009.

The Third and Fourth Claims for Relief allege that DCP intentionally interfered in the relationships between Plaintiff on the one hand, and Li & Fung and GDC on the other, by "directing them not to do business with [Plaintiff], even though both Li & Fung and GDC wanted to license the Pack 'N Wrap from [Plaintiff]." Complaint, ¶¶ 60 and 67. The email from Li & Fung put Plaintiff on notice of this alleged interference in March 2006. With respect to GDC, given the proximity in time to the discussions with Li & Fung and that DCP's alleged interference with GDC is part of the same alleged course of conduct as with Li & Fung, Plaintiff should have brought its Third and Fourth Claims for Relief by March 2008. These claims are also time-barred.

//

//

//

4

## II. **Plaintiff's Contract and Tort Claims Should be Dismissed as a Matter of Law Pursuant to Rule 12(b)(6) and Rule 9(b)**

In addition to being time-barred, the First, Second, and Third Claims for Relief also fail as a matter of law.

### A. **Plaintiff does not and cannot allege the requisite elements underlying its First Claim for Relief for breach of implied contract**

A plaintiff has the burden of proving six elements to state a claim for breach of an implied contract: (1) the plaintiff submitted its idea to the defendant for sale; (2) before submitting its idea, the plaintiff clearly conditioned the disclosure on the defendant's agreement to pay for those ideas if used; (3) the defendant knew about the condition before the plaintiff disclosed the idea; (4) the defendant voluntarily accepted the idea on the plaintiff's terms; (5) the defendant actually used the plaintiff's idea; and (6) the plaintiff's idea had value. *See Klekas v. EMI Films, Inc.*, 150 Cal.App.3d 1102, 1114 (1984). To satisfy these elements, Plaintiff here must have disclosed its contractual terms prior to the disclosure of the idea – *i.e.*, "the offeree must have the opportunity to reject the attempted disclosure if the conditions were unacceptable." *Klekas*, 150 Cal.App.3d at 1114; *see also Faris v. Enberg*, 97 Cal.App.3d 309, 318-320 (1979).

Here, the Complaint wholly fails to allege any facts regarding the second, third, and fourth elements. Complaint, ¶¶ 40-46. Plaintiff fails to allege any facts demonstrating that before submitting its idea for the Pack 'N Wrap to DCP, it "clearly conditioned the disclosure on defendant's agreement to pay for those ideas if used." *Klekas*, 150 Cal.App.3d at 1114. Plaintiff similarly has not described any facts from which such an agreement could be inferred, including any specific statements DCP made or any emails or other communications with DCP.

Similarly, Plaintiff does not allege any facts demonstrating that DCP knew of Plaintiff's conditions, much less any facts demonstrating DCP agreed to pay

5

1  Plaintiff.  Instead of pleading facts to satisfy these elements, the Complaint makes

2  the conclusory allegation that Plaintiff and DCP "engaged in this exchange of

3  materials and information with the bilateral expectation, fully and completely

4  understood, that if Disney pursued the Pack 'N Wrap," Plaintiff would be

5  compensated.  Complaint, ¶ 43.  Plaintiff cannot rely on any so-called

6  "understanding" to support its clam.  Unexpressed and subjective intent cannot

7  support a claim for breach of contract, implied or otherwise.  *United Commercial*

8  *Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992) ("the true

9  intent of a party is irrelevant if it is not expressed").  In addition, such conclusory

10  pleading does not satisfy the pleading requirement the Supreme Court enunciated

11  in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("a plaintiff's obligation to

12  provide the 'grounds' of his 'entitlement to relief' requires more than labels and

13  conclusions, and a formulaic recitation of the elements of a claim for relief will not

14  do.").

15       Accordingly, Plaintiff's First Claim fails to state a claim and should be

16  dismissed under Rule 12(b)(6).

17

18  **B.    The Second Claim for Relief for fraud should be dismissed for**

19  **failure to state a claim**

20       The Second Claim for Relief alleges that DCP "fraudulently concealed its

21  true intentions and plans" from Plaintiff.  Complaint, ¶48.  Fraudulent concealment

22  requires the following elements:  that (1) the defendant concealed or suppressed a

23  material fact; (2) the defendant had a duty to disclose the fact to the plaintiff; (3)

24  the defendant intentionally concealed the fact with the intent to defraud the

25  plaintiff, (4) the plaintiff was unaware and would not have acted as she did if she

26  knew of the concealed fact; and (5) the plaintiff sustained damages as a result of

27  the concealment.  *Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*, 6

28  Cal.App.4th 603, 612-613 (1992).

1   With respect to the second element, a duty to disclose typically arises in one

2   of four circumstances: (1) the defendant is in a "fiduciary" or "confidential"

3   relationship with the plaintiff; (2) the defendant makes representations but does not

4   disclose facts which materially qualify the facts disclosed, or which render his

5   disclosure likely to mislead; (3) the facts are known or accessible only to the

6   defendant, who knows they are not known to or reasonably discoverable by the

7   plaintiff; and (4) the defendant actively conceals discovery from the plaintiff.

8   *Marketing West*, 6 Cal.App.4th at 612-613.

9   Here, Plaintiff does not allege how and why DCP owed any duty to disclose

10  anything to Plaintiff.  Indeed, it is hard to imagine why and how DCP would owe

11  any duty whatsoever to the Plaintiff, which admittedly approached DCP

12  unsolicited.  Courts in these circumstances have sustained motions to dismiss (or

13  demurrers to) fraudulent concealment claims.  As the court held in *Goodman v.*

14  *Kennedy*, 18 Cal.3d 355, 346-47 (1976) (internal citations omitted):

15

16   Being grounded solely on omissions, the validity of the present fraud
     counts depends on allegations that would establish some duty of
17   disclosure on the part of defendant.  No such duty is shown.  There is
     no allegation of a confidential relationship, or of any representation by
18   defendant that was likely to mislead for want of the disclosures, or of
     any active concealment of the undisclosed matters.
19

20  Moreover, Plaintiff has failed to plead the fraud allegations adequately.  To

21  satisfy Rule 9(b), a plaintiff must "state with particularity the circumstances

22  constituting fraud."  *Fed. R. Civ. P.* 9(b); *In re Daou Sys., Inc.,* 411 F.3d 1006,

23  1027 (9th Cir. 2005); *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1105 (9th Cir.

24  2003).  In all averments of fraud, the pleader "must state the time, place, and

25  specific content of the false representations as well as the identities of the parties to

26  the misrepresentation."  *Odom v. Microsoft Corp.*, 486 F.3d 541, 553-54 (9th Cir.

27  2007).

28

7

1    Here, Plaintiff has not stated the time, place, specific content, and identities

2    of the specific parties to the alleged fraud.  Instead, Plaintiff has merely made

3    several allegations on information and belief about DCP's alleged fraudulent

4    scheme.  *See, e.g.*, Complaint, ¶¶ 30 and 49 ("On information and belief, Disney

5    purposefully concealed its true intentions and plans . . .").  Accordingly, Plaintiff

6    has failed to plead the fraud allegations with particularity.

7

8    **C.**     **The Third Claim for Relief for intentional interference with contract**

9            **should be dismissed because it cannot be based on a mere**

10           **"agreement to agree"**

11   Plaintiff's intentional interference with contract claim fails because Plaintiff

12   and co-defendant GDC never entered into a contract in the first place.  If there was

13   no valid contract between Plaintiff and GDC, DCP could not have interfered.  *See*

14   *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126 (1990)

15   (tort of intentional interference with contract requires a valid contract between

16   plaintiff and third party).

17   It is well settled that California courts refuse to treat "agreements to agree"

18   as contracts.  *See, e.g., Autry v. Republic Productions*, 30 Cal.2d 144, 151 (1947)

19   ("There is no dispute that neither law nor equity provides a remedy for breach of

20   an agreement to agree in the future.  Such a contract cannot be made the basis of a

21   claim for relief."); *Etco Corp. v. Hauer*, 161 Cal.App.3d 1154, 1158 (1984).  Here,

22   the June 2006 "Letter of Intent" is clear and unambiguous that it was only an

23   "agreement to agree":

24

25       1.  This letter is intended to set forth the basic terms by which [GDC]
             is willing, subject to execution and delivery of the agreement
26           referred to in Paragraph 2 below, to license from [Plaintiff] the
             Pack 'N Wrap products . . . .

27       2.  GDC and [Plaintiff] will negotiate in good faith, for the purpose of
             executing and delivering within ninety (90) days from the date
28           hereof, a definitive written agreement with respect to the licensing
             of the Products . . . .

8

[Concluding Paragraph]  This letter is intended only to set forth the basic terms in which GDC is willing to negotiate with the view of entering into the Agreement (and except for the provisions of Paragraphs 4 through 7 and for the obligation to negotiate in good faith within the ninety (90) day period as set forth in Paragraph 2, which shall be legally binding) is not intended to be legally binding on either GDC or [Plaintiff].

Complaint, Exh. B.  Because the "Letter of Intent" states that it was non-binding and clearly anticipated the subsequent execution of "a definitive written agreement," it was an unenforceable agreement to agree.[2]  *See, e.g., Rennick v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309, 315 (9th Cir. 1996) ("letter of intent" simply "refers to a writing documenting the preliminary understandings of parties who intend in the future to enter into a contract."); *McCarthy Gilroy, LLC v. Starbucks Corp.*, No. C-08-05411, 2009 WL 3353238, at *3-*4 (N.D. Cal. Oct. 15, 2009) (granting defendant's motion to dismiss contract claims given letter of intent's express terms that it was non-binding and only became binding upon subsequent written agreement).  *See also* 1 Williston on Contracts, Section 4;11, at 504 (4th ed. 2005) ("if the parties expressly provide that no obligation shall arise until the formal writing is executed, that expression of intent will be given effect.").

Plaintiff's intentional interference with contract claim should therefore be dismissed as a matter of law.

### III.    The Sixth Claim for Relief for Patent Infringement Should be Dismissed

The invention claimed in the '707 Patent and the Accused Products are both simple products.  On this motion to dismiss, the court can and should simply compare the Accused Products to the '707 Patent and find non-infringement as a matter of law.

---

2 To the extent that Plaintiff claims that DCP interfered with Plaintiff's 90-day negotiating period with GDC, the categories of damages sought by Plaintiff, *i.e.*, the lost royalties and sales should Plaintiff and GDC have actually entered into an agreement, as well as the "demise" of Plaintiff and lost "life savings", Complaint, ¶ 62, are not recoverable as a matter of law.  *Copeland v. Baskin Robbins U.S.A.*, 96 Cal.App. 4th 1251, 1263 (2002).

9

## A. <u>Patent infringement claims can be dismissed as a matter of law</u>

Rule 8 requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P.* 8(a)(2). If a complaint fails to satisfy Rule 8, it "must be dismissed" under Rule 12(b)(6). *Twombly*, 550 U.S. at 570. To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible on its face*.'" *Ashcroft v. Iqbal*, __ U.S. __, __, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570) (emphasis added). "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 129 S. Ct. at 1950. Those facts must be sufficient to push the claims "across the line from conceivable to plausible[.]" *Id.* at 1951 (quoting *Twombly*, 550 U.S. at 557). *Twombly* governs "pleadings in patent infringement actions." *See AntiCancer Inc. v. Xenogen Corp.*, 248 F.R.D. 278, 282 (S.D. Cal. 2007) (dismissing patent infringement claims for failure to satisfy *Twombly* pleading standard).

The facts pled in the Complaint do not push Plaintiff's patent infringement claims "across the line from conceivable to plausible." While patent claims are not typically resolved on a motion to dismiss, this is one of those cases where doing so is appropriate. *See, e.g.*, *Colida v. Nokia, Inc.*, 347 F3d.Appx. 568, 569-570 (Fed. Cir. Oct. 6, 2009). In *Colida*, the Federal Circuit affirmed the district court's granting of a motion to dismiss the plaintiff's design patent infringement claim, noting that the plaintiff's "infringement claims were facially implausible and provided the district court with no basis on which to reasonably infer "design patent infringement." In reaching this decision, the Federal Circuit compared the physical differences between the claimed design and the accused product.[3] While

---

[3] In other intellectual property contexts, courts in the Ninth Circuit have held that "when the copyrighted work and the alleged infringement are both before the Court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss." *See Christianson v. West Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945); *see also Campbell v. The Walt Disney Company*, __ F.Supp.2d __, 2010 WL

1   the patent-in-suit here is not a design patent, its claims are directed to a simple

2   product that the Court can readily compare with the Accused Products.[4]  It is

3   apparent from a comparison of the Accused Products to the '707 Patent that there

4   is no infringement.

5

6   **B.**      **The Accused Products are non-infringing because they lack**

7            **significant claim elements of the '707 Patent**

8            A patent claim can only be infringed if each element of the claim is present

9   in an accused product.  *See Bai v. L & L Wings, Inc.,* 160 F.3d 1350, 1353 (Fed.

10  Cir. 1998).  Moreover, a patent can only be infringed if one of its independent

11  claims is infringed.  *See Monsanto Co. v. Syngenta Seeds, Inc.,* 503 F.3d 1352,

12  1359 (Fed. Cir. 2008).

13           While this determination is typically made after a *Markman* hearing, that is

14  unnecessary here.  Claim construction is a matter of law, *see Cybor Corp. v. PAS*

15  *Techs., Inc.,* 138 F.3d 1448, 1454-55 (Fed. Cir. 1998) *(en banc)*, and in "some

16  cases the ordinary meaning of claim language as understood by a person of skill in

17  the art may be readily apparent even to lay judges, and claim construction in such

18  cases involves little more than the application of the widely accepted meaning of

19  commonly understood words."  *Phillips v. AWH Corp.,* 415 F.3d 1303, 1314 (Fed.

20  Cir. 2005) *(en banc)*.  Here, the '707 Patent claim terms are sufficiently simple that

21  _____

22  2489189 (N.D. Cal. May 7, 2010) (dismissing copyright infringement claim for alleged
     infringement of screenplay on motion to dismiss after district court compared

23  copyrighted screenplay to allegedly infringing movie).

24           4 Concurrent with this motion, DCP has also lodged photographs of the Accused
     Products, together with a request for judicial notice. *See Branch v. Tunnell*, 14 F.3d 449,

25  453 (9th Cir. 1994) (court can consider items not physically attached to complaint "if the
     complaint itself refers to that document and its authenticity is not questioned");

26  C*ampbell*, __ F.Supp.2d __, 2010 WL 2489189 at *6, n.3 (granting request for judicial

27  notice for the motion picture "CARS" on 12(b)(6) motion to dismiss); *Capcom v. MKR
     Group*, No. C 08-0904, 2008 WL 4661479 (N.D. Cal. 2008) (taking judicial notice of

28  film and videogame on 12(b)(6) motion to dismiss).  DCP will bring actual physical
     samples of the Accused Products to the hearing on this motion.

1  no *Markman* hearing is necessary to construe the claims prior to engaging in an

2  infringement analysis.

3       The two independent claims, No. 1 and No. 19, are discussed below together

4  with the elements that the Accused Products lack.  The relevant portions of the

5  independent claims are reprinted in their entirety in the Appendix attached hereto,

6  along with sample photographs illustrating the missing claim elements.

7

8       **1.  The Accused Products do not infringe Claim No. 1 of the '707**

9           **Patent**

10      The Accused Products are missing at least the following limitations in Claim

11  No. 1 of the '707 Patent:

12      No interior pockets:  Claim 1 (clause 4) of the '707 Patent requires "pockets

13  disposed on said interior surface" and "at least one intermediate pocket on said

14  interior surface."  The Accused Products lack any pockets on the interior surfaces;

15  instead, the Accused Products only have pockets on the outside, exterior surface.

16  This is readily determined simply by looking at the Accused Products.

17      Both fastener elements do not have "at least a portion" on the exterior

18  surface of the wings:  Claim 1 (clauses 2 and 3) requires "a first fastener element

19  having at least a portion on said exterior surface" and "a second complementary

20  fastener element having at least a portion on said exterior surface . . . ."  Together,

21  clauses 2 and 3 make clear that the fastener elements both must have "at least a

22  portion" on the exterior surface of each of the wings.

23      The Accused Products have one fastener element (Velcro strips) on the

24  interior surface of one end, with a corresponding second fastener element (also

25  Velcro strips) on the exterior surface of the other end.  This is readily ascertained

26  by simply looking at the Accused Products.  Because *only one* fastener element on

27  one end has "at least a portion" on the exterior surface, the Accused Products lack

28  this element of the '707 Patent.

No cushioning provided to stored articles:  Claim 1 (clause 6) requires that when a sleeping bag is rolled inside the pack and the pack is fastened for transportation, the bag body and sleeping bag as a unit provide cushioning for the articles stored in the pockets.

The Accused Products, which have storage on the only the exterior surface, are not designed to provide cushioning for the stored articles.  Instead, the pockets are on the exterior of the Accused Products for quick and easy access to these articles when the wrap is fastened for transport, and not for cushioning.

Because at least these claim limitations are absent in the Accused Products, Claim No. 1 is not infringed as a matter of law.

## 2.  The Accused Products do not infringe Claim No. 19 of the '707 Patent

The Accused Products are missing at least the following limitations in Claim No. 19 of the '707 Patent:

No shoulder straps:  Claim 19 (clause 3) requires "a pair of spaced apart shoulder straps connected to said support region for carrying said bag body as a backpack."  The Accused Products have *only one carrying strap*, not a pair of spaced-apart shoulder straps.  As such, the Accused Products cannot be worn as a backpack.

No interior pockets:  Similar to Claim 1, Claim 19 (clause 5) also requires a "plurality of compartments spanning a substantial length of said inwardly facing side of said bag body".  The Accused Products have no compartments on its inwardly-facing side; instead, the Accused Products only have compartments on the outwardly-facing side.

Because at least these claim limitations are absent in the Accused Products, Claim No. 19 also is not infringed as a matter of law.

1

## **CONCLUSION**

2   For the foregoing reasons, defendant DCP respectfully requests that the

3   Court grants its motion to dismiss.

4

5   DATED:  September 27, 2010        LEE TRAN & LIANG APLC

6

7

                                    By  /s/ Enoch Liang (9.27)
8                                       Steven R. Hansen
9                                       Enoch H. Liang
                                        Attorneys for Defendant Disney Consumer
10                                      Products, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14

# APPENDIX:  CLAIM ELEMENTS COMPARED

## TO ACCUSED PRODUCTS[5]

### Claim No. 1:

| '707 Patent | Accused Products |
| --- | --- |
| [1] an elongated, substantially rectangular bag body including an exterior surface and an interior surface and defining a medial carrying section and two laterally disposed flexible storage wings operable to wrap about said rolled up sleeping bag; | |
| [2] a first fastener element having **at least a portion on said exterior surface** of one of said wings; | As shown in Figures 2 and 3, the Accused Products have a first fastener element (Velcro strips) on the exterior surface (Figure 2) of one end, with a second complementary fastener (Velcro strips) on the **interior surface** (Figure 3) of the other end.<br><br>They do not have an exterior fastener element on the exterior surface of each end as required by clause 2 and clause 3 read together. |
| [3] a second complementary fastener element having **at least a portion on said exterior surface** of the other of said wings and operable to couple with said first fastener element when said wings are brought together; | As shown in Figures 2 and 3, the Accused Products have a first fastener element (Velcro strips) on the exterior surface (Figure 2) of one end, with a second complementary fastener (Velcro strips) on the |

---

5 For purposes of this motion to dismiss, DCP is relying on certain claim limitations to establish non-infringement.  However, DCP's silence as to any remaining limitations should not be construed as an admission that such limitations are present in the Accused Products.  DCP reserves the right to rely on limitations other than those expressly discussed herein to establish non-infringement.

| | |
|---|---|
| | **interior surface** (Figure 3) of the other end.<br><br>They do not have an exterior fastener element on the exterior surface of each end as required by clause 2 and clause 3 read together. |
| [4] **pockets disposed on said interior surface** of said storage wings and at least one intermediate pocket on **said interior surface** in said medial carrying section, said pockets including openings with closures parallel to at least one side of said bag body, at least one of said pockets being constructed from a substantially waterproof material, and having a viewing window, said pockets constructed to receive substantially flattened or compressible articles; and | As shown in Figures 2 and 3, the Accused Products only have pockets on the outside, **exterior surface**. |
| [5] at least one carrying strap fastened to said exterior surface whereby a user may place articles into said pockets and said wings of said bag body rolled up with said interior surface abutting a circumference of said rolled up sleeping bag and said fastener elements fastened enabling the transportation of said bag body and sleeping bag as a unit **while cushioning said articles with said sleeping bag**. | The Accused Products do not provide cushioning for the articles against the sleeping bag. |

Because the Accused Products lack at least 3 out of the 5 claim limitations, Claim No. 1 of the '707 Patent is not infringed as a matter of law.

16

### Claim No. 19: [6]

| '707 Patent | Accused Products |
|---|---|
| [1] an elongated, flexible, substantially rectangular bag body having a medially disposed storage section on an **inwardly facing side** of said bag body and a support region on an opposing exterior side of said bag body; | As shown in Figure 3, the Accused Products do not have any storage sections on the inwardly facing side. |
| [2] a pair of wings extending from said medially disposed storage section and including a secondary storage section, said wings adapted to be wrapped about a sleeping bag; | |
| [3] a plurality of compartments spanning a substantial length of said **inwardly facing side** of said bag body in said medially disposed storage section and said secondary storage section and including openings with closures parallel to at least one side of said bag body, at least one of said compartments being constructed from a substantially waterproof material and having a viewing window; | As shown in Figure 3, the Accused Products do not have a plurality of compartments on the inwardly facing side. |
| [4] a pair of complementary fasteners adapted to secure said wings to one another about a sleeping bag; and | |
| [5] **a pair of spaced apart shoulder straps** connected to said support region for carrying said bag body as a | As shown in Figure 2, the Accused Products have only **one carrying strap**.  This strap **does not permit** |

---

6 For purposes of this motion to dismiss, DCP is relying on certain claim limitations to establish non-infringement.  However, DCP's silence as to any remaining limitations should not be construed as an admission that such limitations are present in the Accused Products.  DCP reserves the right to rely on limitations other than those expressly discussed herein to establish non-infringement.

| backpack. | the Accused Products to be worn as a backpack. |
| --- | --- |

Because the Accused Products lack at least 3 out of the 5 claim limitations, Claim No. 19 of the '707 Patent cannot be infringed as a matter of law.

18

## APPENDIX:  PICTURES OF ACCUSED PRODUCTS

**Figure 1 –
Accused Product**



Pockets on Exterior
with Graphics

Single carrying
Strap



**Figure 2 – Exterior of Accused Product**

Velcro Fastener on
Exterior of one end



Velcro Fastener on
Interior of other end

Product Tag and Care
Label on Interior

**Figure 3 – Interior of Accused Product**

No pockets on
Interior

19